UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


MICHAEL EUGENE GRIMAGE,

      Plaintiff,

v.                              Case No. 3:13-cv-935-J-39PDB

D. HILLIARD, et al.,

      Defendants.

_____

## ORDER

### I. Status

Plaintiff Michael Eugene Grimage,[1] an inmate of the Florida Department of Corrections (FDOC), who is proceeding pro se, initiated this case by filing a civil rights complaint (Doc. 1). He is proceeding on an Amended Civil Rights Complaint (Amended Complaint) (Doc. 21) filed pursuant to 42 U.S.C. § 1983.[2] The Court will construe the pro se Amended Complaint liberally.

The remaining Defendants are D. Hilliard and Nurse Tollick. The remaining claims are: (1) Defendant Hilliard, in his individual

---

[1] Defendants refer to Plaintiff's surname as Grimace, as he is incarcerated under that name. Plaintiff refers to himself as Grimage in the Amended Complaint. In light of the fact that Plaintiff uses the surname Grimage, the Court will refer to him by that name.

[2] When referring to the documents filed in this case, the Court references the pagination assigned by the Electronic Filing System.

capacity, used excessive force against Plaintiff in violation of the Eighth Amendment, and (2) Defendant Tollick, in her individual capacity, was deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment. As relief, Plaintiff seeks compensatory damages and injunctive relief that he be sent for an examination by a doctor not employed by Florida State Prison (FSP).

This cause is before the Court on Defendants' Motion for Summary Judgment (Defendants' Motion) (Doc. 85).[3] Plaintiff responded.[4] See Plaintiff's Amended Response to Defendants' Motion for Summary Judgment (Amended Response) (Doc. 133).

---

[3] The Court will refer to Defendants' Exhibits as "Ex."

[4] The Court advised the pro se Plaintiff of the provisions of Rule 56, Fed. R. Civ. P., and gave him an opportunity to respond. See Order (Doc. 31) and Notice (Doc. 88). Plaintiff initially responded on July 27, 2015, and filed Plaintiff's Response to Oppose the Defendants' Motion for Summary Judgment (Doc. 89). Plaintiff, on April 4, 2016, filed a Request for Extension of Time and Inquiry (Doc. 128), stating that he needed an extension of time to adequately respond to the motion for summary judgment. The Court, in its April 7, 2016 Order (Doc. 130), granted Plaintiff's request for an extension of time to the extent that Plaintiff was granted leave to file an amended response by May 9, 2016, or, if Plaintiff elected to rely on his original response (Doc. 89), to notify the Court by May 9, 2016 that he intends to rely on his previously filed response. Plaintiff did not file a notice that he intended to rely on his previously filed response. Therefore, the Court will not consider Plaintiff's Response to Oppose the Defendants' Motion for Summary Judgment (Doc. 89). The Court will, however, consider the Amended Response (Doc. 133), as Plaintiff elected to file it, and he filed it prior to the May 9, 2016 deadline.

## II.  Standard of Review

The Eleventh Circuit set forth the summary judgment standard.

> Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The substantive law controls which facts are material and which are irrelevant.  <u>Raney v. Vinson Guard Service, Inc.</u>, 120 F.3d 1192, 1196 (11th Cir. 1997).  Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial.  <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990).  A <u>pro se</u> plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence.  <u>See</u> <u>Murrell v. Bennett</u>, 615 F.2d 306, 310 n.5 (5th Cir. 1980).  Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." <u>Ellis v. England</u>, 432 F.3d 1321, 1327 (11th Cir. 2005).

> As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91

> L.Ed.2d 202 (1986).  Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment.  See Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990) (discounting inmate's claim as a conclusory allegation of serious injury that was unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Howard v. Memnon, 572 F. App'x 692, 694-95 (11th Cir. 2014) (per curiam) (footnote omitted).

Of import, at the summary judgment stage, the Court assumes all the facts in the light most favorable to the non-moving party, in this instance, the Plaintiff, and draws all inferences in the Plaintiff's favor.  McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam).  "Summary Judgment is appropriate only when, under the plaintiff's version of the facts, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Felio v. Hyatt, 639 F. App'x 604, 606 (11th Cir. 2016) (per curiam) (citation omitted).  Therefore, summary judgment would properly be entered in favor of Defendants where no genuine issue of material fact exists as to whether Plaintiff's constitutional rights were violated.

### III. Summary of Plaintiff's Complaint

In his verified Amended Complaint,[5] Plaintiff alleges the following facts.  On April 5, 2013, while housed at FSP C-wing, Defendant Hilliard escorted Plaintiff to cell C-1105.  Amended Complaint at 5.  Hilliard instructed Plaintiff to get on top of the bare steel bunk on his knees, while handcuffed to a waist chain and ankle restraints, so that Hilliard could remove the restraints.  Id.  After the waist chain and ankle restraints were removed, Hilliard ordered Plaintiff to get off of the bunk the same way he got on it.  Id. at 5-6.  Plaintiff, still handcuffed behind his back, informed Hilliard that it was impossible to get up without injuring his leg due to the high arch of the steel guardrail.  Id.  Hilliard grabbed Plaintiff by his shirt collar, yanking the collar backwards.  Id. at 6.  Plaintiff came off of the bunk awkwardly and slipped on the wet floor.  Id.  Plaintiff slipped and fell, hitting his head on the wall and iron towel rack, knocking himself unconscious.  Id.  Hilliard denied Plaintiff medical services on April 5, 2013.  Id.

On April 15, 2013, Plaintiff returned from medical where an investigation was undertaken to confirm injuries sustained in the

---

[5] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (per curiam) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

April 5, 2013 incident.  Id.  When he entered C-wing, Hilliard escorted Plaintiff to the shower area.  Id.  Hilliard grabbed Plaintiff by his throat and threatened to do him harm.  Id.  On April 29, 2013, Plaintiff filed a grievance, which was approved by separating him from Hilliard.  Id.  Hilliard continued to harass Plaintiff.  Id.

On April 10, 2013, Nurse Tollick denied Plaintiff pain relief, treatment, and referral to a doctor for the injuries sustained on April 5, 2013.  Id. at 7.  Tollick denied treatment at the request of Hilliard, who was present.  Id.

On April 23, 2013, Tollick refused to examine Plaintiff and treat the injuries sustained on April 5, 2013.  Id.  She refused to examine Plaintiff's complaint of head and neck swelling.  Id.

On May 30, 2013, Tollick falsified medical documents, claiming that Plaintiff refused medical assistance after she discovered that Plaintiff had requested a different nurse.  Id.  Plaintiff complains that he suffered injuries to his neck, head, and back, and the symptoms (dizziness, headaches, swelling, and blackouts) persist.  Id.

### IV. Defendants' Motion

Defendants Hilliard and Tollick contend that the are entitled to summary judgment in their favor.  They first assert that the action is barred pursuant to 42 U.S.C. 1997e(e).  Defendants' Motion at 11-17.  They also ask this Court to enter summary

judgment in their favor because Plaintiff failed to exhaust his administrative remedies with respect to the claim that Hilliard used excessive force on April 5, 2013, and Tollick displayed deliberate indifference on April 10, 2013 and May 30, 2013. Id. at 17-21. Defendant Tollick asks for summary judgment on the claim of deliberate indifference. Id. at 21-24. Hilliard asks for summary judgment on all excessive force claims. Id. at 24-26. He also asks for summary judgment on Plaintiff's claim of harassment, asserting that this particular assertion does not present a claim of constitutional dimension. Id. at 26-27. Defendants urge this Court to find that Plaintiff is not entitled to injunctive relief. Id. at 27-28. Finally, Defendants state they are entitled to qualified immunity. Id. at 28-29.

### V. Plaintiff's Amended Response

Plaintiff, in his Amended Response, urges this Court to find that there remain genuine issues of material fact in dispute. Amended Response at 2. He relies on the medical records, and claims the records will show the injuries he suffered at the hands of Hilliard and will demonstrate Tollick's deliberate indifference to those needs. Id. Plaintiff states his claims of injury at the hands of Hilliard were left unaddressed until the Investigating Officer of Plaintiff's grievances ordered an examination of his alleged injuries, "which revealed swelling in head, hand, and

tonsil area" more than ten days after the infliction of the injuries. Id.

In his Sworn Affidavit (Doc. 133-1) at 1, Plaintiff states that he will show "how Defendant Tollick deliberately refused to report (accurately) and/or examine the extensive swelling on head and hand and finger imprints on neck, that were evident (physically) to another nurse."

## VI.   Summary of Defendants' Version of the Events

Defendants deny Plaintiff's allegations of wrongdoing. Defendants state that the medical record shows that Plaintiff has complained of, and received treatment for, head, neck, and back injuries for years prior to the April 5, 2013 incident. Defendants' Motion at 4; Ex. D, Declaration of Albert Carl Maier, M.D., J.D., (Doc. 85-4) at 2-3, ¶9-¶18; Ex. E, Plaintiff's Medical Records (Doc. 98-3).[6]  In particular, Defendants point to the fact

---

[6] Dr. Maier notes the following: a complaint of neck pain from February 4, 2010; a head injury, after Plaintiff rammed his head into a plate glass window of the medical unit on June 19, 2012; a complaint of dizziness and neck pain on June 23, 2012; a complaint of neck pain, headaches, and dizziness on July 17, 2012; a complaint of headaches and facial swelling on August 14, 2012;  a complaint of pain and swelling on the left side of the face and neck after Plaintiff banged his head and face on his cell wall; a complaint of headaches and neck pain on October 22, 2012; a complaint of neck pain on October 31, 2012; a complaint of neck pain, radiating to the back and upper shoulder, on December 5, 2012; and a complaint of headaches, head and sharp neck pain on February 26, 2013 and March 19, 2013, and additionally, a complaint of low back pain and back left side head pain on March 19, 2013.

that Plaintiff rammed his head into a glass window on June 19, 2012. Id. at 41.

In his Declaration, Hilliard states that he was an employee of the FDOC at FSP in April, 2013, and on April 5, 2013, he placed Plaintiff in his cell after escorting him to the cell for housing placement. Ex. G, Hilliard's Declaration (Doc. 85-5) at 1. He explains that this cell placement "required escorting Grimace into his cell, taking off his restraints other than his handcuffs, exiting the cell while leaving him in the cell and locking the cell door, opening the food flap to the cell to remove his handcuffs and, lastly, locking the food flap." Id. He continues and states that the placement occurred without incident. Id. He further states there was no water or other liquid on the floor of Plaintiff's cell. Id. at 1-2. Hilliard denies grabbing Plaintiff's shirt collar or any part of Plaintiff's clothing or body to pull him off of his bunk. Id. at 2. He also disputes Plaintiff's allegation that he slipped or fell inside of the cell or hit his head on any object or lost consciousness. Id. Further, Hilliard states that Plaintiff did not request that Hilliard or any other officer obtain medical assistance for Plaintiff. Id. With respect to the cell front medical assessment undertaken by Defendant Tollick on April 10, 2013, Hilliard states that he does not recall whether he was present or in the vicinity of Plaintiff's cell during that examination. Id.

With respect to the April 15, 2013 incident, Hilliard states that he did not choke or threaten Plaintiff in any manner.  Id.  He admits to escorting Plaintiff to the shower area after he received medical attention.  Id.  Hilliard notes that he was in the shower area for about a minute, then left.  Id.  Plaintiff remained in the shower area.  Id.  Hilliard does not recall speaking to or interacting with Plaintiff in the shower area.  Id.  Hilliard also denies ever harassing or threatening Plaintiff.  Id.

In her Declaration, Defendant Tollick states that in April of 2013, she was employed as a Correctional Medical Technician Certified (CMTC) at FSP.  Ex. H, Tollick's Declaration (Doc. 85-6) at 1.  As such, she was responsible for seeing inmates in close management confinement, maximum management confinement, and on death row, with regard to medical issues.  The examination of these inmates included "performing sick call, performing basic assessments, checking vital signs, and responding to and assisting in responding to medical emergencies."  Id.  She would go to the particular inmate's cell, check his vital signs, perform an assessment while looking for signs signifying an emergency that warranted further action or a doctor's visit, and complete medical assessment forms.  Id.

In response to Plaintiff's allegation that on April 10, 2013, Tollick did not provide Plaintiff with any pain relief or treatment and failed to schedule him to see a doctor, Tollick provides her

10

Declaration.  She states that she examined Plaintiff on April 10, 2013, after reviewing his sick call request and medical chart.[7] Id. at 2.  First, she notes that Plaintiff did not display any signs of head trauma or other recent injury on that date.  Id.  She found his appearance to be "perfectly healthy."  Id.  Although Plaintiff complained of ongoing back pain, neck pain, and pain all over his body, she determined his complaints did not constitute an emergency, as these were signs "related to degenerative disc disease, a chronic condition associated with aging that causes back and neck pain."  Id. at 3.  Tollick states that she examined Plaintiff by asking numerous questions concerning the alleged injuries and symptoms, taking his temperature and blood pressure, looking for signs of a serious medical condition constituting an emergency, and by having Plaintiff perform a variety of motions to determine the nature and extent of his claimed injuries and symptoms, including an assessment of when a motion became painful. Id.  She could not detect any signs of any medical issues during the examination and questioning of Plaintiff.  Id.  Despite this lack of detection, in an abundance of caution, she offered Plaintiff a prescription for over-the-counter medication (either

_____

[7] The medical record also shows that on April 10, 2013, Tollick examined Plaintiff during the back pain protocol.  Ex. E (Doc. 98-3) at 32.  She noted that Plaintiff had a history of back pain and had received Motrin, 600 mg.  Id.  Plaintiff complained of pain all over his body, with worse pain in his neck.  Id. Plaintiff refused pain medication and stated he wanted an MRI.  Id. at 32-33.

Ibuprofen or Tylenol) for swelling that may cause pain.   Id.
Plaintiff refused the medication, stating he wanted a Magnetic
Resonance Imaging (MRI) examination.   Id.   Before his departure,
Tollick instructed Plaintiff to return if his symptoms returned or
worsened, or if new symptoms developed.   Id.

Thereafter, on April 23, 2013, Tollick examined Plaintiff
pursuant to a sick call request for examination.[8]   Id.   During the
course of her evaluation, Tollick found that Plaintiff did not
display any signs of head trauma, nor did he display any visible
signs of any recently sustained injury or medical issue.   Id.   She
found Plaintiff's appearance to be that of a "perfectly healthy"
person.   Id.   Plaintiff did not state that he had back and neck
pain or pain all over his body.   Id.   Instead, he complained about
ongoing headaches, vertigo, and blackouts, including an alleged
blackout on April 22, 2013.   Id.   He did state that he "had a knot
on his head and that his hand hurt," and that these injuries were
caused by a fall.   Id.

---

[8] This April 23, 2013, sick call examination was based on
Plaintiff's complaint of a knot on his head and hand pain, not the
alleged choking incident or throat pain.   Ex. E (Doc. 98-3) at 30.
Plaintiff informed Nurse Tollick he was injured in a fall.   Id.
Nurse Tollick found no swelling or deformity.   Id.   She also found
Plaintiff's skin to be in tact.   Id.   That day, Tollick also
examined Plaintiff concerning a claimed blackout occurring the
morning of April 22, 2013.   Id. at 31.   Nurse Tollick found
Plaintiff conscious, alert and oriented to person, place, time.
Id.   She conducted a neurological test.   Id.   She found no facial
droop.   Id.   She determined that no treatment was required and
instructed plaintiff to return if his symptoms worsened or changed.
Id.

Tollick examined Plaintiff by asking numerous questions about his injuries and symptoms. Id. Tollick continued her examination by taking Plaintiff's blood pressure and temperature and performing tests to determine the nature and extent of his injuries and symptoms, including the Pupil Equal Round Reactive to Light (PERRLA) test.[9] Id. Plaintiff did not show any signs of having suffered from head trauma or a serious neurological issue. Id. at 4.

Tollick also conducted a visual examination of Plaintiff. She observed no signs of head trauma, including deformities, contusions, abrasions, punctures, swelling, redness or other discoloration. Id. Tollick's assessment was that Plaintiff was not suffering from a medical issue, and he did not require medical treatment. Id. Tollick instructed Plaintiff to access sick call if he believed he needed medical assistance. Id. Tollick further states that, in an abundance of caution, after her examination of Plaintiff, she discussed Plaintiff's alleged injuries and his claimed symptoms with an on-site doctor. Id.

Pursuant to another sick call request made by Plaintiff, Tollick states that she attempted to examine Plaintiff on May 30, 2013. Id. Plaintiff refused to get out of his bunk and come to

---

[9] The PERRLA test involves observing the patient's facial gestures and listening to his responses to questions in order to assess whether the interaction and communication exhibited is within normal neurological functions. Ex. H (Doc. 85-6) at 4.

the window of his cell so that Tollick could conduct an examination. Id. Tollick explains that this is considered to be a voluntary refusal as "[i]t is impossible to conduct a medical examination if the inmate does not approach the window to participate in the examination." Id. Due to Plaintiff's failure to approach the window, Tollick was unable to check his vital signs or have any physical contact with Plaintiff. Id. Furthermore, Plaintiff's failure to approach meant that Tollick could not communicate with Plaintiff in accordance with medical privacy guidelines. Id. Plaintiff also refused to sign the Refusal of Health Services Form on that date. Id.

Another nurse examined Plaintiff on April 15, 2013. Ex. E (Doc. 98-3) at 51. G. Crawford, RN, examined Plaintiff for a claimed injury resulting from a April 5, 2013 slip in water in his cell. Id. The chronological records reflect that Plaintiff was seen for alleged slip and fall injuries. Id. at 86. Plaintiff claimed he hit his head and fell on his left hand. Id. at 51. The nurse found a small edema on the left posterior scalp and on the third knuckle of Plaintiff's hand. Id. Nurse Crawford contacted the doctor. Id. As treatment, Plaintiff was provided with seven packets of Ibuprofen. Id. Plaintiff was discharged to his cell with instructions to keep his hand elevated and access sick call as needed. Id.

In response to Plaintiff's claim that he had been choked on April 15, 2013,[10] Plaintiff received an examination on April 29, 2013. <u>Id</u>. at 49. Plaintiff said he had difficulty swallowing. <u>Id</u>. Again, Nurse Crawford examined Plaintiff. <u>Id</u>. She found no swelling of the neck or throat. <u>Id</u>. Crawford found minimal redness around Plaintiff's tonsil area and concluded that the doctor need not be notified and no treatment need be provided. <u>Id</u>. Plaintiff was told to gargle with warm water and access sick call, if needed. <u>Id</u>.

## VII. Law and Conclusions

### A. Exhaustion of Administrative Remedies

Defendants assert that Plaintiff failed to exhaust administrative remedies prior to filing his civil rights complaint. Specifically, they contend that summary judgment should be granted in favor of Defendant Hilliard on the claim of excessive use of force occurring on April 5, 2013, and in favor of Defendant Tollick on the claim of deliberate indifference to serious medical needs occurring on April 10, 2013 and May 30, 2013. Defendants' Motion at 17.

---

[10] Plaintiff waited until April 16, 2013 to write a grievance to the assistant warden alleging that an officer, on April 15, 2013, grabbed him by the throat and threatened him. Ex. M (Doc. 85-11) at 6. Plaintiff did not claim injury in this grievance. <u>Id</u>. As relief, Plaintiff sought to have the incident placed on the record and the officer moved to a different wing. The assistant warden referred the matter to the Inspector General.

The Court recognizes that an inmate plaintiff is required to exhaust available administrative remedies.  42 U.S.C. § 1997e(a).  Additionally, there are Circuit guidelines for reviewing a prisoner's civil rights claims:

> Before a prisoner may bring a prison-conditions suit under § 1983, the Prison Litigation Reform Act of 1995 requires that he exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); see also Booth v. Churner, 532 U.S. 731, 736, 121 S.Ct. 1819, 1822, 149 L.Ed.2d 958 (2001). **The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."** Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006) (quotation omitted). To properly exhaust, a prisoner must "[c]ompl[y] with prison grievance procedures." Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 922–23, 166 L.Ed.2d 798 (2007).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1208 (11th Cir. 2015) (emphasis added).

In this vein, there is a two-step process for resolving the matter:

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner,[11] 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082.

---

[11] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley, 802 F.3d at 1209.

As noted by Defendants, "failure to exhaust is an affirmative defense under the PLRA[.]" Jones v. Bock, 549 U.S. at 216. However, "the PLRA exhaustion requirement is not jurisdictional[.]" Woodford v. Ngo, 548 U.S. 81, 101 (2006). See Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (recognizing that the defense "is not a jurisdictional matter"). Significantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the Prison Litigation Reform Act. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008); Jones v. Bock, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted).

Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[12] 286 F.3d, at 1024. . . .

Id. at 90.  In fact, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  Id.

In the first step of the analysis, the Court recognizes that Plaintiff is not required to plead exhaustion.  Defendants contend that Plaintiff has not properly exhausted his administrative remedies, and in order to make its specific findings to resolve disputes of fact, the Court will review the record before it, keeping in mind that the Defendants bear the burden of showing failure to exhaust.

With respect to the April 5, 2013, alleged excessive force incident, the Court is convinced that Plaintiff adequately exhausted available administrative remedies.  The record is replete with documents showing that Plaintiff's complaint of the excessive use of force was referred to the Office of the Inspector General and others for review.  Ex. M (Doc. 85-11) at 1-5.  As noted in

---

[12] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir.), cert. denied, 537 U.S. 949 (2002).

Woodford, the purpose of the exhaustion requirement is to ensure that corrections officials have both the time and opportunity to address complaints internally before the initiation of a civil rights action. Here, Plaintiff grieved the incident of April 5, 2013, and the corrections officials notified Plaintiff that the matter had been referred to both the Inspector General for investigation and to institutional management for review. As such, the Court is persuaded that Plaintiff adequately exhausted his internal administrative remedies under these particular circumstances.

The record demonstrates the following. In his April 29, 2013, Request for Administrative Remedy or Appeal addressed to the Warden, Plaintiff submits that the document is a formal grievance, referencing two previously filed informal grievances about incidents occurring on April 5, 2013 and April 16, 2013. Id. at 5. In his grievance, Plaintiff advises the Warden that he did not receive a written response in a timely fashion to his informal grievances, and he was unaware of the results of the two informal grievances.[13] Id. Plaintiff asks for the review of these informal grievances. Id. On May 6, 2013, Plaintiff's request for administrative remedy was rejected for not being in compliance with

---

[13] The record includes an April 29, 2013 response to Plaintiff's April 16, 2013 grievance about being grabbed by the throat. Ex. M (Doc. 85-11) at 6. The Assistant Warden responded that an incident report has been written. Id.

the rules, stating that Plaintiff failed to attach his informal grievances or provide a sufficient excuse for his failure to comply. Id. at 4. However, the response also states that the informal grievances have been answered and returned to Plaintiff. Id. Also, it states that the previously reported allegations were reported to the Office of the Inspector General for review. Id.

On May 9, 2013, Plaintiff appealed to the Secretary of the Florida Department of Corrections (FDOC). Id. at 2-3. In his Request for Administrative Remedy or Appeal addressed to the Secretary, Plaintiff specifically references staff abuse by Officer Hilliard, complaining that the officer grabbed him by the shirt collar and forcefully pulled him off of the steel bunk. Id. at 2. Again, Plaintiff states that he wrote an informal grievance on April 5, 2013, but he never received a response, and that he had submitted a formal grievance as well. Id. Plaintiff asks that an investigation be undertaken. Id. Plaintiff's appeal to the Secretary was rejected as not being in strict compliance with administrative rules because it addressed more than one issue. Id. at 1. However, the May 22, 2013 staff response states that Plaintiff's allegation of staff abuse was referred to the Inspector General for review and in turn referred to management at the institution for review. Id.

Also of note, when Plaintiff grieved several incidents, including the April 5, 2013 incident, stating that he had received

life threatening injuries as a result of the excessive use of force and asking for storage of the relevant videotapes, the grievance response, although denied as to the request for storage of videotapes, states that Plaintiff's grievance issues had already been addressed by Lt. West, incident reports had been filed, and the Inspector General notified of Plaintiff's complaints. Plaintiff's Exhibit A (Doc. 134-2).

As such, it is clear that Plaintiff complaint of staff abuse was processed, giving corrections officials both the time and opportunity to address Plaintiff's complaint.  Indeed, the matter was addressed by staff, incident reports were prepared, and the allegation of staff abuse was referred to both the Office of the Inspector General and to management at the institution for review. Under these particular circumstances, the Court rejects Defendants' assertion that Plaintiff failed to exhaust his administrative remedies.  The incident of staff abuse was brought to the attention of the appropriate authorities and vetted.  Once the matter was referred to the Inspector General and to management of the institution, there was no apparent additional relief to be obtained from staff at the FDOC.

Defendant Tollick also claims that she is entitled to summary judgment on the claim of deliberate indifference to serious medical needs based on failure to exhaust administrative remedies with regard to two incidents, an April 10, 2013 incident, and a May 30,

2013 incident.  Defendants' Motion at 17.  The Court finds that
Plaintiff has exhausted his administrative remedies.

The record reflects that on May 5, 2013, Plaintiff filed a
grievance addressed to the Assistant Warden and the Chief Health
Officer.  Ex. M (Doc. 85-11) at 10.  He complains about being
deprived medical care by a nurse on April 23, 2013, but he also
states that he has been suffering these pains without relief
because of the sick-call nurse's intentional denial of even
Ibuprofen.  Id.  He mentions that he fell and hit his head due to
being handcuffed behind his back.  Id.  He also states that he
believes the injuries to be serious, and the sick-call nurse has
allowed his injuries to go unexamined.  Id.  The May 17, 2013,
response states that Plaintiff's "**chart and sick calls** have been
carefully reviewed[,]" and the claimed injuries and other medical
complaints were assessed and no swelling was noted and no
neurological deficits were found.  Id. at 9.  Also, it includes the
statement that "Ms. Tollick denies your allegations."  Id.
Finally, Dr. Espino denied the grievance.  Id.

Plaintiff, in his May 23, 2013 appeal to the Secretary,
mentions "the continual denial of medical treatment[.]"  Id.
Plaintiff references back to his April 5, 2013 injury, and states
that he has been denied x-rays, MRI's, or any other type of
examination.  Id.  As relief, he request that he be referred to a
specialist to evaluate his injuries that have persisted since April

5, 2013, and be provided appropriate treatment. Id. The Secretary's Response, dated June 19, 2013, denies the grievance, concluding that Dr. Espino's response of May 17, 2013 appropriately addressed "the issues you presented." Id. at 7.

Also of note, when Plaintiff grieved several incidents and requested the storage of relevant videotapes (including the April 10, 2013 and May 30, 2013 incidents),[14] the grievance response, although denied as to the request for storage of videotapes, states that Plaintiff's grievance issues had already been addressed by Lt. West, incident reports had been filed, and the Inspector General notified of Plaintiff's complaints. Plaintiff's Exhibit A (Doc. 134-2).

As such, it is clear that Plaintiff complaint of deprivation of medical care by the sick-call nurse was processed, giving corrections officials, including Dr. Espino, the Chief Health Officer, both the time and opportunity to address Plaintiff's complaint. Dr. Espino undertook a review of Plaintiff's "chart and **sick calls**[.]" Ex. M (Doc. 85-11) at 9. Dr. Espino contacted Tollick and she denied Plaintiff's allegations that she allowed his complaints to go unexamined since his fall on April 5, 2013. Id. Also of import, the matter was addressed by staff, incident reports were prepared, and the Inspector General notified of Plaintiff's

---

[14] Plaintiff claimed the nurse was cooperating with an assaulting officer, and the nurse denied Plaintiff any medical treatment.

complaints.   Under these particular circumstances, the Court rejects Defendants' assertion that Plaintiff failed to exhaust his administrative remedies.   The claimed deprivation of medical care by the sick-call nurse was brought to the attention of the appropriate authorities and vetted.

## B.   Verbal Abuse

Defendants also contend that they are entitled to summary judgment based on Plaintiff's allegations of harassment and verbal abuse.   Such allegations do not state a claim of federal constitutional dimension.  See Hernandez v. Fla. Dep't of Corr., 281 F. App'x. 862, 866 (11th Cir. 2008) (per curiam) (citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)) ("Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats[,] and verbal abuse alone is insufficient to state a constitutional claim."), cert. denied, 555 U.S. 1184 (2009).

> "[M]ere threatening language and gestures of a custodial office do not, even if true, amount to constitutional violations." Coyle v. Hughes, 436 F.Supp. 591, 593 (W.D. Okl[a]. 1977). "Were a prisoner . . . entitled to a jury trial each time that he was threatened with violence by a prison guard, even though no injury resulted, the federal courts would be more burdened than ever with trials of prisoner suits . . . ." Bolden v. Mandel, 385 F.Supp. 761, 764 (D. Md. 1974). See Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973) (the use of words, no matter how

violent, does not comprise a section 1983 violation).

McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. denied, 464 U.S. 998 (1983).

Thus, to the extent Plaintiff is attempting to raise a claim of verbal abuse or harassment, Defendants' Motion is due to be granted.

### C.  Injunctive Relief

Plaintiff named the Defendants in their individual capacities. He has not raised any official capacity claims.  Therefore, he is not entitled to injunctive relief against these Defendants named only in their individual capacities.  Hall v. Jarvis, No. 3:10-cv-442-J-99MMH-TEM, 2011 WL 971125, at *6 (M.D. Fla. Mar. 2, 2011) (citation omitted) (claims seeking injunctive and declaratory relief are official capacity claims, not individual capacity claims).  Defendants' Motion is due to be granted with respect to Plaintiff's claim for injunctive relief.

### D.  Eighth Amendment

Plaintiff raises an Eighth Amendment claim of excessive force, and in this regard, the Eighth Amendment prohibits the infliction of cruel and unusual punishment.  U.S. Const. amend. VIII.  In an excessive force case, the core inquiry is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quoting Hudson v. McMillian,

25

503 U.S. 1, 7 (1992)).   Defendant Hilliard asserts that summary
judgment should be entered in his favor with respect to Plaintiff's
claim of the excessive use of force.   Defendants' Motion at 24-26.

Plaintiff's contemporaneous grievance, dated April 5, 2013,
alleges that he was taken to a cell that had a puddle of water on
the floor.   Ex. K (Doc. 85-9) at 1.   Plaintiff asked for something
to clean up the water coming from the toilet.   <u>Id</u>.   At that time,
Plaintiff was in shackles and waist chains and handcuffed.   <u>Id</u>.
The officer directed Plaintiff to get on his knees on the steel
bunk with a steel railing around the edge of the bunk so that the
officers could remove some of his restraints.   <u>Id</u>.   Plaintiff did
so.   <u>Id</u>.   After the officers removed the shackles and waist chains,
they told Plaintiff to come to the door for removal of the
handcuffs.   <u>Id</u>.   Plaintiff found the raised steel edge made it
difficult to stand up independently.   <u>Id</u>.   "When inmate attempted
to get up, he slipped and fell, falling on his hand (left) and
bumping his head on wall."   <u>Id</u>.

As initially grieved, there is no assertion of a use of force
by Hilliard.   Plaintiff describes a slip and fall.   At most, based
on the initial grievance, Plaintiff has presented a negligence
claim due to the officers' failure to clean up the visibly wet
floor or to allow Plaintiff to clean up the visibly wet floor,
resulting in a slip and fall.

In his Amended Complaint, Plaintiff adds a significant factor to his story: that he told Hilliard that it was impossible for him to get up without injuring his leg due to the high arch of the steel guardrail, and in response Hilliard grabbed Plaintiff by his shirt collar and yanked Plaintiff backwards, resulting in Plaintiff coming off of the bunk awkwardly and then stepping into the water and slipping on the wet floor.

With regard to the incident as described in the Amended Complaint, the Court must "consider both a subjective and objective component: (1) whether the 'officials act[ed] with a sufficiently culpable state of mind,' and (2) 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" Tate v. Rockford, 497 F. App'x 921, 923 (11th Cir. 2012) (per curiam) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)), cert. denied, 133 S.Ct. 1822 (2013).

> In both Fourteenth and Eighth Amendment excessive force claims, whether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (establishing the standard for an Eighth Amendment excessive force claim); see Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying the Whitley test in a Fourteenth Amendment excessive force case). If force is used "maliciously and sadistically for the very purpose of causing harm," then it necessarily

> shocks the conscience.  See Brown v. Smith,
> 813 F.2d 1187, 1188 (11th Cir. 1987) (stating
> that the Eighth and Fourteenth Amendments give
> equivalent protections against excessive
> force).  If not, then it does not.

Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per

curiam).

Here, assuming arguendo the facts as described by Plaintiff in

his Amended Complaint are true, the use of force that allegedly

occurred on April 5, 2013 would not violate Plaintiff's right to be

free from cruel and unusual punishment.  "Courts examine the facts

as reasonably perceived by the defendants on the basis of the facts

known to them at the time."  Howard v. Memnon, 572 F. App'x 692,

695 (11th Cir. 2014) (per curiam) (citation omitted).  As related

by Plaintiff, after removing the shackles and waist chains, the

officers ordered Plaintiff to approach the door for removal of the

handcuffs.  Plaintiff did not comply with this order, but instead

informed Hilliard that he could not get up without injuring his leg

due to the high arch of the steel guardrail.  Based on the facts as

alleged in the verified Amended Complaint, Hilliard, in response to

Plaintiff's assertion that he could not get up by himself,

attempted to lift Plaintiff off of the steel bunk by grabbing

Plaintiff by the shirt collar and yanking him backwards.  Hilliard

did not injure Plaintiff by the amount of force used to grab his

shirt collar and yank him off of the steel bunk.  Instead,

Plaintiff claims that once he was lifted off of the bunk, he

stepped awkwardly in water and slipped on the wet floor.  When he slipped on the wet floor, he claims he struck his head on the wall and the iron towel rack.

Here, the force used was not used maliciously and sadistically for the very purpose of causing harm.  See Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  It was used to maintain and restore discipline and security.  Plaintiff had been unshackled from his leg and waist chains.  He was left with handcuffs behind his back. At that point, the officers directed Plaintiff to come to the door for handcuff removal, avoiding placing themselves in a vulnerable position inside a confinement cell with a completely unsecured inmate.  Plaintiff did not comply with this order, stating he was not able to get up off the bunk over the steel rail without injuring himself.

Assuming arguendo Plaintiff's factual allegations are true, the force used after Plaintiff told Hilliard that he could not stand up by himself due to the steel guard around the bunk was not for the purpose of causing harm, but for the purpose of lifting Plaintiff off of the bunk, over the steel rail, in order to get Plaintiff in a standing position so he could proceed to the door for handcuff removal purposes.  Construing all facts in favor of Plaintiff, this was not gratuitous violence used maliciously and sadistically to cause Plaintiff harm.  Harm befell Plaintiff when

he stepped in the puddle of water and slipped and fell, resulting in his bumping his head on the wall and towel rack.

Of note, the United States District Court for the Southern District of Alabama addressed a claim of excessive use of force resulting in a slip and fall. Holloway v. Brewer, No. 13-0217-CB-M, 2014 WL 460935, at *2 (S.D. Ala. Feb. 5, 2014) (Not Reported in F.Supp.3d).   In that case, the Plaintiff claimed that the extraction team entered his cell, a scuffle ensued, and Plaintiff jumped off of his bunk, slipped and fell, and landed on his left ear.   Id.   Holloway claimed there was an unauthorized, excessive use of force that was both malicious and sadistic.   Id. at *3.   In addressing his claim, the court looked to whether the evidence showed that the officers inflicted unnecessary and wanton pain and suffering, or used force "totally without penological justification."   Id. at *5 (citations omitted).   In doing so, the court recognized that his "evidence must go beyond a mere dispute over reasonableness of the force used and support a reliable inference of wantonness in the infliction of pain." Id. (citing Brown v. Smith, 813 F.2d, 1187, 1188 (11th Cir.1987)).

In order to determine malicious purpose and whether the use of force was wanton or unnecessary, five factors should be considered: the need for the application of force; the relationship between the need and the amount of force used; the threat reasonably perceived by the prison official; any efforts made to temper the severity of

a forceful response; and the extent of the injury suffered by the inmate.  <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986).  In <u>Holloway</u>, the court, after considering the evidence, concluded that there was a need for the application of force "given Plaintiff's refusal to comply with every order given to him[.]" <u>Id</u>. at *6.  Indeed, "[t]he Eleventh Circuit has long held that using force to compel compliance with a valid order satisfies the first factor regarding a need for an application of force." <u>Id</u>. at *6 (citing <u>Brown</u>, 813 F.2d at 1189).

In the case at bar, accepting the facts as stated by Plaintiff, there was need for the application of force because Plaintiff refused to comply with a direct order to come to the door of his cell for the removal of handcuffs.  Therefore, the valid order satisfies the first factor with respect to the need for force.  In order to address the second factor, this Court must look to "the relationship between the need and the amount of force used[.]" <u>Id</u>. at 6.  The corresponding force used to get Plaintiff in a position to comply with the order was minimal.  As described by Plaintiff, Hilliard grabbed Plaintiff's shirt collar and yanked him up off of the steel bunk.  Therefore, the second factor is satisfied.

With respect to the third factor, the Court asks whether the Defendant reasonably perceived Plaintiff and his refusal to obey an order as a threat to security.  If an inmate refuses to obey a

proper order, "he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger." Id. (quoting Helton v. Burks, 2013 WL 6081764 (M.D. Ga. Nov. 19, 2013) (citing Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir.1984)). Here, Officer Hilliard gave a proper order, directing Plaintiff to come to the door for removal of his handcuffs.

The fourth factor, whether an officer makes efforts to temper the severity of the force, must also be considered. Plaintiff refused to comply with a verbal order, and the officer used minimal force, the amount of force necessary to remove Plaintiff from the bunk. No strikes, blows or kicks were utilized to obtain compliance with the proper order. Reviewing the incident in Plaintiff's cell in favor of the Plaintiff, "[t]hey did not even take Plaintiff to the ground;" id. at *7, he came off of the bunk awkwardly, his feet hit the ground and he slipped in the puddle of water.

The fifth and final factor is whether the injuries were severe. In this instance, any injuries were caused by the slip and fall,[15] not by the officer grabbing Plaintiff by the shirt collar

---

[15] Since any injuries were caused by the slip and fall, the Defendants' contention that the action is barred by 42 U.S.C. § 1997e(e) is superfluous. Alternatively, Plaintiff alleges physical injury, and he had documented swelling on the back side of his head and on his hand, and he complained of pain, headaches and dizziness. "Tracking the language of the statute, § 1997e(e) applies only to lawsuits involving" federal civil actions brought

and pulling him off of the bunk.  Again, the force used by
Hilliard, as described by Plaintiff in the Amended Complaint, was
certainly minimal: the amount needed to remove Plaintiff from the
bunk.

Even viewing the evidence in the light most favorable to
Plaintiff, his allegations do not support a reliable inference that
a wanton infliction of pain was imposed by Hilliard; therefore,
"there is no dispute sufficient enough that a trier of fact could
return a verdict in Plaintiff's favor."  Id. (citation omitted).
As such, Defendant Hilliard is entitled to summary judgment with
respect to the claim of excessive use of force on April 5, 2013.

To the extent Plaintiff is claiming that he was subjected to
unconstitutional conditions of confinement due to the leaking
toilet and water puddling on the floor, see Ex. K (Doc. 85-9) at 1,
resulting in a slip and fall accident, his claim does not rise to
the level of a federal cause of action.  The United States District
Court for the Middle District of Georgia addressed a similar claim:

> Plaintiff Gates is essentially pleading a
> slip and fall claim; however, a slip and fall
> accident does not give rise to a federal cause
> of action. See Wynn v. Ankoh, 2006 WL 2583370
> (M.D. Ga. 2006); citing LeMaire v. Maass, 12
> F.3d 1444, 1457 (9th Cir. 1993) ("slippery
> prison floors ... do not even state an

---

by a prisoner for mental or emotional injury suffered while in
custody.  Napier v. Preslicka, 314 F.3d 528, 532-32 (11th Cir.
2002), cert. denied, 540 U.S. 1112 (2004).  Here, there is a
claimed physical injury and some evidence of injury.

arguable claim for cruel and unusual
punishment."); <u>Denz v. Clearfield Co.</u>, 712
F.Supp. 65, 66 (W.D. Pa. 1989) (finding no
Eighth Amendment violation based on slippery
floor in prison cell); <u>Mitchell v. West
Virginia</u>, 554 F.Supp. 1215, 1216-17 (N.D. W.
Va. 1983) (finding no Eighth Amendment
violation based on slippery floor in prison
dining hall); <u>Robinson v. Cuyler</u>, 511 F. Supp
161, 162-63 (E.D. Pa. 1981) (finding no Eighth
Amendment violation based on a slippery floor
in a prison kitchen); <u>Tunstall v. Rowe</u>, 478
F.Supp. 87, 88-9 (N.D. Ill. 1979) (finding no
Eighth Amendment violation based on a greasy
stairway).

In <u>Daniels v. Williams</u>, Plaintiff Daniels
complained that he slipped and fell, injuring
his back and ankle, due to a pillow
negligently left in a prison stairway by a
guard. 474 U.S. 327, 106 S.Ct. 662 (1986). The
Supreme Court of the United States held that
"the Due Process Clause [of the Fourteenth
Amendment] is simply not implicated by a
*negligent* act of an official causing
unintended loss of or injury to life, liberty,
or property." <u>Id</u>. at 328. Explaining further,
The Court stated:

> We think the actions of prison
> custodians in leaving a pillow on
> the prison stairs, or mislaying an
> inmates's property, are quite remote
> from the concerns just discussed.
> Far from an abuse of power, lack of
> due care suggest no more than a
> failure to measure up to the conduct
> of a reasonable person. To hold that
> injury caused by such conduct is a
> deprivation within the meaning of
> the Fourteenth Amendment would
> trivialize the centuries-old
> principle of due process of law....
> The only tie between the facts of
> this case and anything governmental
> in nature is the fact that
> respondent was a sheriff's deputy at
> the Richmond city jail and

34

> petitioner was an inmate confined in
> that jail. But while the Due Process
> Clause of the Fourteenth Amendment
> obviously speaks to some facets of
> this relationship ... we do not
> believe its protections are
> triggered by lack of due care by
> prison officials.... Where a
> government official's act causing
> injury to life, liberty, or property
> is merely negligent, "no procedure
> for compensation is constitutionally
> required."
>
> Id. at 332-333; citing Parratt v. Taylor, 451
> U.S. 527, 548, 101 S.Ct. 1908, 68 L.Ed.2d 420
> (1981) (additional citations omitted).
>
> In the instant case, Plaintiff cannot
> establish [t]hat the Defendants' conduct was
> more than mere negligence. Brown v. Johnson,
> 387 F.3d 1344, 1351 (11th Cir. 2004). The
> higher Courts have repeatedly determined that
> a slip and fall case, such as Plaintiff Gates'
> case, does not rise above mere negligence and
> does not create a claim for a Constitutional
> violation.

Gates v. Jolley, Case No. 4:06CV50 CDL, 2007 WL 106533, at *5 (M.D.

Ga. Jan. 8, 2007) (Not Reported in F.Supp.2d).

With regard to the second incident, the April 15, 2013, use of

force in the shower area, Plaintiff claims that Hilliard "grabbed

me by my throat" and made verbal threats directing Plaintiff to

keep his mouth shut.  Ex. B (Doc. 85-3) at 11.  Plaintiff grieved

the incident to the assistant warden the following day, complaining

that, while in handcuffs and shackles, an officer grabbed him by

the throat.  Ex. M (Doc. 85-11) at 6.  Although Plaintiff states in

his deposition that he requested medical treatment the next day, a

request concerning the choking incident is not contained in the medical record. Ex. B (Doc. 85-3) at 14.

Although the record is not entirely clear why Plaintiff was seen in medical on April 29, 2013, apparently Plaintiff alleged staff abuse, claiming that on April 15, 2013, after being returned to his cell from a medical visit, an officer took him to the shower and choked and verbally threatened him. Ex. E (Doc. 98-3) at 49. Plaintiff told Nurse Crawford he was having difficulty swallowing. Id. Nurse Crawford found "minimal redness" in the tonsil area, but no swelling of the throat or neck.[16] Id. The Emergency Room Record shows no injury identified and a documented decision of no need for medical treatment at this time. Id. at 49-50. Plaintiff was instructed to gargle with warm water and to access sick call. Id. at 49.

Defendant Hilliard contends that he is entitled to summary judgment, assuming arguendo this incident occurred (which he denies), because it was a minor use of force not repugnant to the conscience of mankind, particularly when there was lack of injury or other conditions requiring medical treatment. In his

---

[16] The Court notes that prior to Plaintiff alleging that he was grabbed by the throat, Plaintiff frequently complained of neck pain. Ex. D (Doc. 85-4). For example, on April 10, 2013, Plaintiff was seen in sick call and he complained of ongoing pain, worse in his neck. Ex. E (Doc. 98-3) at 32. He insisted that he wanted an MRI. Id. at 33. Nurse Tollick offered over-the-counter medication and instructed Plaintiff to return if his symptoms worsened or if any new symptoms developed. Id. at 33.

Declaration, Ex. G (Doc. 85-5) at 2, Hilliard states that he simply escorted Plaintiff to the shower area after Plaintiff received medical attention, and that Hilliard was there for approximately one minute, but Plaintiff remained in the shower area. Hilliard does not recall speaking to or interacting with Plaintiff while in the shower area. Id. On the other hand, in his Deposition, Plaintiff attests that he was taken back to his cell after his medical appointment, and when he got back to his cell, Hilliard said "You ran your mouth, huh?" Ex. B (Doc. 85-3) at 11. At that point, Hilliard took Plaintiff to the shower area, grabbed Plaintiff by the throat and threatened Plaintiff to keep his mouth closed. Id.

Again, five factors should be considered in assessing malicious purpose and whether the use of force was wanton and unnecessary: the need for the application of force; the relationship between the need and the amount of force used; the threat reasonably perceived by the prison official; any efforts made to temper the severity of a forceful response; and the extent of the injury suffered by the inmate. The incident described by Plaintiff in his deposition supports his claim that there was absolutely no need for the application of force. As there was no need for any use of force, the amount of force was unnecessary. There was no threat to the safety or security of the institution, staff, or inmates caused by the actions of Plaintiff as he was

handcuffed and shackled.   Finally, as described by Plaintiff,
Hilliard made no effort to temper the severity of the use of force
in the shower area.   Indeed, there was no need for the use of force
at all based on Plaintiff's version of the facts.

The remaining issue is the extent of the injury suffered by
Plaintiff.   Of import, the *de minimis* nature of the injury is not
dispositive.   Based on established law, "significant injury" is not
a threshold requirement for stating an excessive force claim.
Wilkins v. Gaddy, 559 U.S. at 37.   On the contrary, this Court must
inquire as to whether force was applied in a good faith effort to
maintain or restore discipline, or maliciously and sadistically to
cause harm.   Id. (citation omitted).   As thoroughly explained in
Wilkins,

> This is not to say that the "absence of
> serious injury" is irrelevant to the Eighth
> Amendment inquiry. Id. at 7, 112 S.Ct. 995.
> "[T]he extent of injury suffered by an inmate
> is one factor that may suggest 'whether the
> use of force could plausibly have been thought
> necessary' in a particular situation."
> Ibid.(quoting Whitley, 475 U.S. at 321, 106
> S.Ct. 1078). The extent of injury may also
> provide some indication of the amount of force
> applied. As we stated in Hudson, not "every
> malevolent touch by a prison guard gives rise
> to a federal cause of action." 503 U.S. at 9,
> 112 S.Ct. 995. "The Eighth Amendment's
> prohibition of 'cruel and unusual' punishments
> necessarily excludes from constitutional
> recognition *de minimis* uses of physical force,
> provided that the use of force is not of a
> sort repugnant to the conscience of mankind."
> Ibid. (some internal quotation marks omitted).
> An inmate who complains of a "push or shove"
> that causes no discernible injury almost

> certainly fails to state a valid excessive
> force claim. Ibid. (quoting Johnson v. Glick,
> 481 F.2d 1028, 1033 (2d Cir.1973)).
>
> Injury and force, however, are only
> imperfectly correlated, and it is the latter
> that ultimately counts. An inmate who is
> gratuitously beaten by guards does not lose
> his ability to pursue an excessive force claim
> merely because he has the good fortune to
> escape without serious injury. Accordingly,
> the Court concluded in Hudson that the
> supposedly "minor" nature of the injuries
> "provide[d] no basis for dismissal of
> [Hudson's] § 1983 claim" because "the blows
> directed at Hudson, which caused bruises,
> swelling, loosened teeth, and a cracked dental
> plate, are not de minimis for Eighth Amendment
> purposes." 503 U.S. at 10, 112 S.Ct. 995.

Wilkins, 559 U.S. at 37–38.

This was not a simple push or shove. Here the force used, an officer grabbing a handcuffed and shackled inmate by the throat and choking him, is the sort of force repugnant to the conscience of mankind as being both diabolic and inhuman, an action that may result in the death of the victim if taken to the extreme. It evinces malice and wantonness. Acknowledging that there is no "arbitrary quantum of injury" required for an excessive force claim, the Court must be mindful that "certain forms of torture are capable of inflicting extreme pain without leaving any mark or tangible injury." Knighten v. Stanton, No. CA 12-0717-WS-C, 2014 WL 1331026, at *6 - *7 (S.D. Ala. Mar. 31, 2014).

In this case, there is no dispute over the reasonableness of a particular use of force. Hilliard denies the use of force

occurred, and Plaintiff insists that it did occur. Hilliard claims, assuming the incident did occur as described by Plaintiff, it was a minor use of force not repugnant to the conscience of mankind, particularly when there was lack of injury or other conditions requiring medical treatment. Viewing the evidence in the light most favorable to the Plaintiff, it supports "a reliable inference of wantonness in the infliction of pain[.]" Whitley, 475 U.S. at 322. Although the injury is not significant, pain and discomfort for two weeks or more, there is certainly no legitimate purpose to the act of choking a handcuffed and shackled fully restrained inmate other than to cause pain and discomfort. Thus, the act described does not constitute an effort to maintain or restore discipline, but instead, an effort to maliciously and sadistically cause harm.

The focus of this Court must be on the nature of the force applied, and the act of grabbing someone around the throat and choking the person is the type of action, particularly in the absence of active resistance to orders or viable threat to the safety and security of the institution, that sufficiently supports an excessive force claim. Although Plaintiff had the good fortune to escape without serious injury, that is not the end of the inquiry. Otherwise, a correctional officer could use force repugnant to the conscience of mankind as long as no marks are left. See Hudson, 503 U.S. at 9.

The act of taking a shackled inmate to a secluded shower area to choke and threaten him is the type of action "designed to inflict extreme pain without leaving tangible injury or conduct that otherwise is so egregious that one could reasonably call it repugnant to the conscience of mankind." Oliver v. Johnson, No. 11-11520-KD-B, 2014 WL 4568724, at *10 (S.D. Ala. Sept. 11, 2014) (Not Reported in F. Supp. 3d). Although there were no discernable marks on Plaintiff's throat two weeks after the incident when he was examined for an alleged throat injury, he continued to complain about the negative effects of the choking incident, including difficulty swallowing. Admittedly, the redness found in the tonsil area may not be attributable to the choking incident, but it does evince some abnormality of the throat.

The parties have submitted different stories, with the conflicting versions of the events signaling defeat of the summary judgment motion with regard to the choking incident. The evaluation of the evidence is a matter for the jury, particularly when the focus of the inquiry is on the nature of he force applied, not the extent of the injury. The Court concludes that Hilliard's motion for summary judgment should be denied with regard to the use of force in the shower area on April 15, 2013. There are genuine issues of material fact that preclude the entry of summary judgment at this stage of the proceeding. See Wilkins, 559 U.S. at 39 (recognizing the shift in the judicial inquiry from the extent of

the injury to the nature of the force, and asking whether the force was applied maliciously and sadistically to cause harm).

### E.  Medical Care

Tollick contends that she too is entitled to summary judgment. Defendants' Motion at 21-24.  Plaintiff claims that Tollick, on April 10, 2013, denied pain relief, treatment, and referral to a doctor for the injuries Plaintiff sustained on April 5, 2013. Plaintiff also claims that Tollick, on April 23, 2013, refused to examine him and treat the injuries he suffered on April 5, 2013. Finally, Plaintiff claims that Tollick, on May 30, 2013, falsified medical documents, claiming that Plaintiff refused medical assistance.  Plaintiff, in his Sworn Affidavit (Doc. 133-1) at 1, states that he will show Tollick either failed to accurately report his injuries and/or examine the extensive swelling on his head and hand and note the finger imprints on his neck, and these were all evident to another nurse.

The Eleventh Circuit addressed the requirements to establish an Eighth Amendment claim concerning the deprivation of medical care:

> The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  To state a claim of unconstitutionally inadequate medical treatment, a prisoner must establish "an objectively serious [medical] need, an objectively insufficient response to that

42

> need, subjective awareness of facts signaling
> the need, and an actual inference of required
> action from those facts."  Taylor v. Adams,
> 221 F.3d 1254, 1258 (11th Cir. 2000).

Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014).

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'  In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  Defendants dispute the fact that Plaintiff had serious medical needs.

The Court is convinced that Plaintiff did not have a serious medical need with regard to his claim that he was grabbed by the throat.  At most, he had minimal redness in the tonsil area.  Nurse Crawford advised Plaintiff to gargle with warm water to ease any discomfort he may be feeling.  This was not a medical need diagnosed as mandating any treatment.  Furthermore, it did not constitute a need so obvious that even a lay person would recognize the need for a physician's attention.

With regard to Plaintiff's claim of injury after the slip and fall, Defendant Tollick claims that Plaintiff received examinations, he refused pain medication, and he cannot show

deliberate indifference.  The medical records show that to be the case.

To satisfy the subjective component, a plaintiff must prove the following:

> "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (alteration in original) (internal quotation marks omitted). Although we have occasionally stated, in dicta, that a claim of deliberate indifference requires proof of "more than mere negligence," McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999), our earlier holding in Cottrell, 85 F.3d at 1490[17], made clear that, after Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), a claim of deliberate indifference requires proof of more than gross negligence.

Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010).

A plaintiff must demonstrate that a defendant's responses to his medical needs were poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in treatment, or even medical malpractice actionable under state law.  Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 105-106 (1976)), cert. denied, 531 U.S. 1077 (2001).  Again, Plaintiff complains that he has not been treated for his serious medical needs and he has not received pain medication.  Of note, "failing to treat an

---

[17] Cottrell v. Caldwell, 85 F.3d 1480 (11th Cir. 1996).

[sic] prisoner's pain can support a claim of deliberate indifference." O'Brien v. Seay, No. 5:04cv228-SPM/EMT, 2007 WL 788457, at *3 (N.D. Fla. Mar. 3, 2007) (citing McElligot v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999)).  As such, Plaintiff must have had an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from the facts presented. Taylor v. Adams, 221 F.3d at 1258.

First, the Court will look to Plaintiff's claim that Tollick, on April 10, 2013, denied him pain relief, treatment, and referral to a doctor for the injuries he sustained on April 5, 2013.  Nurse Tollick saw Plaintiff at sick call on April 10, 2013.  Ex. D (Doc. 85-4) at 3.  The Back Pain Protocol form, dated April 10, 2013, shows that Nurse Tollick undertook a thorough examination of Plaintiff on that date.  Ex. E (Doc. 98-3) at 32.  Plaintiff complained of pain all over his body, but worse in his neck.  Id. Rather than providing a date of onset of the pain, Plaintiff responded it was "ongoing" pain.  Id.  He described an aching pain in the cervical region.  Id.  He complained that pain radiated "everywhere" and did not increase with activity.  Id.  He specifically advised Nurse Tollick that he did not want pain medication; he wanted an MRI.  Id. at 32-33.  Upon examination, Tollick found no swelling, no discoloration, and no bruising.  Id. at 32.  She took Plaintiff's vitals and found his gait to be

normal.   Id.   She did not find a need for immediate clinician notification.   Id.   She noted that Plaintiff refused over-the-counter pain medication.   Id. at 33.   She further noted that in the past, Plaintiff had been given "Motrin 600 mg" for back and lumbar pain.   Id. at 32.

There was neither a denial or a delay of medical care. Tollick recorded Plaintiff's complaints of pain.   Tollick noted that Plaintiff had a history of back problems.   Tollick noted previous treatment for pain.   She asked extensive questions about the type and location of the pain.   Plaintiff described the pain as ongoing.   Tollick observed Plaintiff's gait and examined Plaintiff, noting no swelling, discoloration, or bruising.   Tollick took Plaintiff's vitals.   Finally, Tollick offered over-the-counter pain medication.

Based on the record, Plaintiff failed to establish the subjective component of his deliberate indifference claim to serious medical needs claim because there is no evidence that Tollick disregarded Plaintiff's complaints of pain.   See Ruley v. Corr. Corp. of Am., No. 11-36-ART, 2013 WL 1815039, at *3 (E.D. Ky. Apr. 29, 2013) (finding the claim that the nurse disregarded severe pain inadequately supported by evidence).   Upon review of the record, his treatment was not so cursory as to constitute no treatment.

The fact that Plaintiff was not prescribed particular drugs, not scheduled for an MRI, and not referred to a physician on that date, does not amount to a constitutional violation. If Tollick was deficient in her diagnoses or treatment because she negligently failed to discover injuries, this deficiency does not support a valid claim of an Eighth Amendment violation. This would support a claim of negligence or medical malpractice, at most. This alleged deficiency in failing to properly examine and record swelling or other signs of injury certainly does not amount to deliberate indifference.

In <u>Granda v. Schulman</u>, 372 F. App'x 79, 83 (11th Cir. 2010) (per curiam), the Eleventh Circuit clarified whether a course of treatment would state a claim under the Eighth Amendment:

> Nevertheless, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 106, 97 S.Ct. at 292; <u>see</u> <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir.1985) ("Although [the prisoner] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."). In <u>Estelle</u>, the Supreme Court held that a prisoner failed to state a claim of deliberate indifference by alleging that medical personnel failed to diagnose and treat his back injury properly, which caused him to suffer pain for a three-month period, because he admitted to receiving treatment, including painkillers and muscle relaxants, on multiple occasions. 429 U.S. at 99-101, 106-07, 97 S.Ct. at 288-89, 292-93.

Under these circumstances, Plaintiff's dissatisfaction with his medical treatment is insufficient to sustain a claim for an Eighth Amendment violation.

Five days after Plaintiff's sick call visit for complaints of pain all over his body, Plaintiff was seen in the Emergency Room on April 15, 2013 for an injury described as occurring when he slipped in water in his cell and hit his head and fell on his left hand. Ex. E (Doc. 98-3) at 51. Plaintiff complained of pain in his left hand and headaches. Id. Nurse Crawford examined Plaintiff and found a very small area of edema on his scalp and on his left hand.[18] Id. She informed the physician. Id. At that time, Plaintiff accepted over-the-counter pain medication, Ibuprofen. Id.

Thus, assuming Defendant Tollick failed to recognize the swelling on Plaintiff's head or hand on April 10, 2013, Tollick offered over-the-counter pain medication to Plaintiff to ease his complaint of pain all over his body, the same pain reliever Nurse Crawford offered five days later when she discovered the small edema on his head and hand. The failure to administer stronger medication is the type of medical judgment that should be free from judicial interference, except in very extreme situations. O'Brien

---

[18] Although Plaintiff suggests or implies that Nurse Crawford or another nurse found fingerprint imprints on his neck, the medical records do no contain such a finding by medical staff.

v. Seay, 2007 WL 788457, at *4.  This does not constitute an extreme situation.   The treatment and medication he eventually received does not amount to deliberate indifference.

Even if Plaintiff's treatment were to be considered less than adequate or medical malpractice, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the victim is a prisoner.'" Harris v. Coweta Cnty., 21 F.3d 388, 393 (11th Cir. 1994) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  In this case, Plaintiff may desire different modes of treatment and different medication, but the treatment and he received from Tollick does not amount to deliberate indifference.   Tollick, through her Declaration and documentary evidence, has met her burden of showing that there is no genuine issue of fact concerning whether she was deliberately indifferent to Plaintiff's serious medical needs.   Tollick explained that although she could not detect any signs of any medical issues during her April 10, 2013 examination, she, in an abundance of caution, offered Plaintiff a prescription for over-the-counter medication for swelling that may cause pain.[19]   The contemporaneous medical record shows that Plaintiff told her he did not want pain medication, and when offered pain medication, he

_____

[19] Assuming arguendo Tollick did not offer over-the-counter medication, her failure to offer such medication would not amount to deliberate indifference under these circumstances because Tollick did not detect any sign of any medical issues on that date.

refused the offer and requested an MRI.  It is important to note that Plaintiff, in August and September continued to complain about headaches, vertigo, and pain on the left side of his head, but x-rays revealed no fractures or other abnormalities.  Ex. D (Doc. 85-4) at 4.

Plaintiff also claims that Tollick, on April 23, 2013, refused to examine him and treat the injuries he suffered on April 5, 2013. The record belies this assertion.  Tollick examined Plaintiff for two different complaints on April 23, 2013.  Ex. E (Doc. 98-3) at 30-31.  She examined him for a complaint of a knot on his head and hand pain.  Id. at 30.  Per the patient's rendition of the history of the injury, he claimed he was injured in a fall.  Id.  Plaintiff described left temporal lobe pain at a low level.  Id.  Tollick took Plaintiff's vitals.  Id.  During the course of her examination, she found no swelling or deformity.  Id.  She also found Plaintiff's skin to be in tact.  Id.  Tollick advised Plaintiff to access sick call as needed and determined that a physician need not be notified based on her assessment of Plaintiff's medical condition.  Id.

Tollick also assessed Plaintiff's complaint of a blackout which Plaintiff claimed occurred on April 22, 2013, in the morning. Id. at 31.  Plaintiff complained of headaches and vertigo as well. Id.  He described his symptoms as gradual and ongoing, without pain.  Id.  During her assessment, Tollick found Plaintiff to be

alert and oriented to person, place and time. Id. She took Plaintiff's vitals. Id. She observed that Plaintiff did not exhibit a facial droop. Id. She conducted a PERRLA test. This test was performed without Plaintiff exhibiting signs of having suffered a serious head trauma or neurological issue. Ex. H (Doc. 85-6) at 4. Tollick visually observed Plaintiff, finding no signs of trauma or other abnormalities. Id. Based on her assessment, Tollick concluded that Plaintiff did not require medical treatment and she instructed him to return if his symptoms returned or worsened, or if he developed new symptoms. Ex. E (Doc. 98-3) at 31. Also of import, Tollick discussed Plaintiff's alleged injuries and his claimed symptoms with an on-site doctor after completing the examination. Id.

The record shows that Tollick examined Plaintiff and conducted a relevant inquiry to assess Plaintiff's medical condition. Finding no signs of swelling, deformity, broken skin, trauma, abnormalities, or neurological issues, Tollick concluded the examination with instructions to return if symptoms returned, worsened, or otherwise developed. She took the extra-precautionary step of consulting with a doctor afterwards.

Based on the record, the Court concludes that not only did Tollick examine Plaintiff, she assessed his medical condition and ultimately conferred with a doctor. Plaintiff may be dissatisfied with her assessment, but his difference of opinion about her

conclusion does not support a claim of constitutional dimension. Instead it presents a claim of negligent or inadequate consideration of his condition, not denial or delay of medical care.  Assuming the examination and treatment was less than adequate or medical malpractice, that does not constitute a constitutional violation.   In sum, the medical treatment he received from Tollick does not amount to deliberate indifference.

Plaintiff's third and final allegation against Tollick is that on May 30, 2013, after Plaintiff's third request for medical assistance, Tollick falsified medical documents stating that Plaintiff refused medical assistance.   Amended Complaint at 7. Plaintiff states that Tollick was motivated to falsify documents because Plaintiff requested another nurse to interview him because he believed he would be denied medical assistance.   Id.

The medical record shows Tollick saw Plaintiff on April 10, 2013, but Nurse Crawford saw him on April 15, 2013.  Thereafter, on April 23, 2013, Tollick examined Plaintiff.

With respect to the May 30, 2013 incident, the medical record includes a notation that Plaintiff refused sick call.  Ex. E (Doc. 98-3) at 85.   Tollick, in her Declaration, Ex. H (Doc. 85-6), explains that an attempt was made to examine Plaintiff, but he refused to get out of his bunk and come to the window for the examination.   Id. at 4.  Plaintiff, in his Deposition, states that he was feeling bad and tried to get up, but fell back on his bunk.

Ex. B (Doc. 85-3) at 16.  He stated that Tollick told him he needed to get up and come to the door so she could evaluate him.  Id.  She further stated that Plaintiff was wasting her time and she considered his failure to come to the door to be a refusal.  Id.

Tollick, as a CMTC, says she was responsible for seeing inmates in confinement status for their medical issues.  In that position, she performs sick calls, which include basic assessments. This would require that she go to the cell, have the inmate come forward so that vital signs can be checked and a medical assessment performed.  She would looks for signs signifying an emergency that warranted further action or referral to a doctor, and then complete medical assessment forms.

Tollick states that in compliance with her duties, she went to Plaintiff's cell for a sick call visit on May 30, 2013, and Plaintiff refused to get out of his bunk and come to the window of his cell so that she could conduct an examination.  Plaintiff admitted in his deposition that he felt bad, tried to get up, but did not get up and fell back onto his bunk.  Tollick perceived these actions as Plaintiff's refusal to come to the window for assessment.  As a result of Plaintiff's failure to approach the window, Tollick stated it was impossible for her to conduct a medical examination because Plaintiff would not participate in the examination.  She was unable to check his vital signs or have any sort of physical contact with Plaintiff.  Furthermore, she stated

she was unable to communicate with Plaintiff in a private manner, as required by medical privacy guidelines, because he would not approach her.

Plaintiff's claim of falsification of medical documents is without merit.  Tollick simply marked the call out as refused, as she considered Plaintiff's failure to come to the window of the cell to be a refusal of medical care.  Ex. E (Doc. 98-3) at 85. Plaintiff admits that he did not get up and approach the window of his cell, as directed.  Although he believes this action did not constitute a refusal to participate in sick call, Tollick explained that when an inmate does not get out of his bunk and come to the window of his cell, she is unable to conduct a medical examination and, as a result, the sick call visit is considered to be a refused by the inmate.  As a CMTC, she is supposed to check vital signs which requires some physical contact with the inmate.  She is also obliged to observe the inmate and speak with him about his medical concerns, but she is not allowed to communicate across the cell in a raised voice as the discussion is considered to be confidential under the Health Insurance Portability and Accountability Act (HIPAA).

Although Plaintiff submits that his failure to come to the window was not a "refusal," this is quibbling over semantics. Plaintiff failed to approach the window and participate in the examination; therefore, Tollick marked the medical records as a

"refusal" on that date because she was unable to conduct an examination in accordance with her obligations as a CMTC and in compliance with HIPAA.   Tollick's actions did not amount to deliberate indifference to serious medical needs, and she is entitled to summary judgment.

## F.  Qualified Immunity

Defendants assert that they are entitled to qualified immunity from monetary damages in their individual capacities.  Defendants' Motion at 28-29.  It is undisputed that Defendants were engaged in discretionary functions during the events at issue.  To defeat qualified immunity with respect to Defendants Hilliard and Tollick, Plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. Given the undersigned's conclusion that summary judgment should be granted as to the Eighth Amendment excessive use of force claim related to the April 5, 2013 incident and deliberate indifference to serious medical needs claims, qualified immunity should be granted as to Defendant Hilliard (regarding the April 5, 2013 incident) and Tollick because they did not commit constitutional violations.

When making an excessive force claim, a plaintiff must allege facts sufficient to demonstrate that the officer used force maliciously and sadistically to cause harm to survive a motion to dismiss or a motion for summary judgment.  Indeed,

> if a plaintiff fails to demonstrate a
> constitutional violation – that is, if
> plaintiff does not present evidence which,
> when viewed in the light most favorable to
> that plaintiff, supports an Eighth Amendment
> excessive force claim – the officer is
> entitled to qualified immunity. A *per se* rule
> that qualified immunity is inappropriate on
> summary judgment where a plaintiff has not
> presented evidence that could sustain an
> Eighth Amendment excessive force claim would
> eviscerate the plaintiff's burden of proof to
> show a constitutional violation once a
> defendant evokes qualified immunity and turn
> Rule 56 on its head. See Hope, 536 U.S. at
> 736, and Saucier, 533 U.S. at 201 (a plaintiff
> bears the burden to show that a constitutional
> violation occurred to defeat a defendant's
> assertion of qualified immunity); see also
> Celotex, 477 U.S. at 323-24; Fed. R. Civ. P.
> 56; Skelly v. Okaloosa County Bd. of County
> Com'rs, 456 Fed. Appx. 845, 847-48 (11th Cir.
> 2012) (engaging in a qualified immunity
> analysis on Eighth and Fourteenth Amendment
> excessive force claims and distinguishing
> between a plaintiffs burden to show a
> constitutional violation in the first instance
> from the fact that, once a violation is
> demonstrated, the Eighth Amendment right is
> always clearly established); Fennell, 559 F.3d
> at 1216-17 (Granting qualified immunity where
> plaintiff failed to show that officer's use of
> force constituted excessive force in violation
> of the Fourteenth Amendment.).

Mallory v. Hetzel, No. 2:12-CV-1011-WHA, 2:12-CV-1011-WHA, 2016 WL 5030469, at *6 (M.D. Ala. Aug. 26, 2016), report and recommendation adopted by 2016 WL 5109153 (M.D. Ala. Sept. 19, 2016).

Plaintiff has not presented sufficient evidence to sustain his Eighth Amendment claim with regard to the April 5, 2013 incident. He has not met his burden to show that a constitutional violation occurred to defeat Hilliard's motion for summary judgment. In

addition, Plaintiff has failed to present sufficient evidence to sustain an Eighth Amendment deliberate indifference claim. Tollick's care was not so grossly incompetent or inadequate that it exceeded gross negligence or resulted from a choice to take an easier but less efficacious course of treatment. Even if she failed to recognize and treat Plaintiff's condition, it would only present a colorable claim of medical malpractice. Adams v. Poag, 61 F.3d 1537, 1548 (11th Cir. 1995).

In sum, a reasonable jury could not find that Defendant Hilliard violated Plaintiff's Eighth Amendment rights on April 5, 2013; therefore, Defendant Hilliard is entitled to qualified immunity. In addition, a reasonable jury could not find that Defendant Tollick violated Plaintiff's Eighth Amendment rights; therefore, she is entitled to qualified immunity.

Although it is undisputed that Hilliard was engaged in discretionary functions during the April 15, 2013 incident, given the undersigned's conclusion that summary judgment should be denied as to this particular Eighth Amendment excessive use of force claim, and based on the state of the law on qualified immunity in the Eleventh Circuit, qualified immunity should be denied as to Defendant Hilliard on the excessive use of force claim regarding the April 15, 2013 shower area incident.

**CONCLUSION**

Based on all of the above, Defendant Hilliard is entitled to summary judgment with respect to the Eighth Amendment claim of the excessive use of force concerning the April 5, 2013 incident. With respect to the remaining claim of the excessive use for force, based on the April 15, 2013 incident, Defendant Hilliard's motion is due to be denied. Defendant Tollick is entitled to summary judgment and judgment is due to be entered for her and against Plaintiff.

For all of the foregoing reasons, it is now

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 85) is **GRANTED** with respect to the claim that Defendant Tollick, in her individual capacity, was deliberately indifferent to Plaintiff's serious medical needs. Defendant Tollick is **DISMISSED** from the action **with prejudice.** Judgment to that effect will be withheld pending adjudication of the action as a whole.

2. Defendants' Motion for Summary Judgment (Doc. 85) is **GRANTED** with respect to the Eighth Amendment excessive use of force claim against Defendant Hilliard with regard to the April 5, 2013 incident; with respect to any claim of verbal abuse; and with respect to any claim for injunctive relief. In all other respects, Defendant Hilliard's Motion for Summary Judgment (Doc. 85) is **DENIED.**

3. The remaining claim is Defendant Hilliard, in his individual capacity, used excessive force against Plaintiff in violation of the Eighth Amendment on April 15, 2013.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of December, 2016.


_____
BRIAN J. DAVIS
United States District Judge




sa 11/22
c:
Michael Eugene Grimage
Counsel of Record